Filed 9/27/21  P. v. Robles CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B306498 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. SA059334-01 |
| DAVID ROBLES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James Richard Dabney, Judge.  Affirmed.

Carlo A. Spiga for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

David Robles appeals from the superior court's order denying his petition under Penal Code section 1170.95.[1] That statute allows certain defendants convicted of murder under the felony-murder rule or the natural and probable consequences doctrine to petition the court to vacate their convictions and for resentencing. Here, the trial court—without appointing counsel or inviting briefing—found Robles had failed to demonstrate his entitlement to relief. Because the record of conviction establishes Robles is ineligible for resentencing as a matter of law, any errors the superior court committed were harmless. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *The crimes, convictions, and appeal*

In 2006, the People charged Robles, along with his co-defendant Jessie Garcia, with the murders of Michael Juarez and Anthony Juarez, as well as the attempted murders of Matthew Vaughn and Frank Juarez. The People alleged the murders were "a special circumstance within the meaning of Penal Code Section 190.2(a)(3)," multiple murder. The People also alleged the defendants committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang and—as to Garcia—that a principal used and discharged a firearm causing death or great bodily injury to the victims. The People alleged Robles had several prior strikes, including robbery, assault with a deadly weapon, and false imprisonment with a gun.

As the facts of Robles's crimes are irrelevant to our analysis, we summarize them only briefly.[2]

---

[1] References to statutes are to the Penal Code.

[2] On May 19, 2021, we granted the Attorney General's motion for the court to take judicial notice of the file in Robles's direct appeal, *People v. Robles et al.* (Feb. 25, 2014, B232828)

2

Robles and Garcia were cousins, roommates, and gang members.  Frank Juarez had a clothing store in Santa Monica; his co-owner, Arturo Arce, was a gang member.  On October 27, 1998, Frank was at the store preparing for its grand opening.  His cousins Michael and Anthony Juarez were with him, along with an acquaintance, Matt Vaughn.  "Just before noon, three masked men entered the store and fired multiple rounds" "randomly."  The gunmen then "fled to a waiting car."  (*Robles I*.)

Michael had been shot 13 times and died.  "Anthony, who had suffered five gunshot wounds, was still breathing but died minutes later."  Frank and Vaughn both were wounded but survived.  (*Robles I*.)

Witnesses at a fast food restaurant across the street "heard multiple gunshots fired in rapid succession" and saw three men, wearing long coats and carrying long guns, come out of the store and run to a waiting car that sped away.  Robles later was identified as the driver.  (*Robles I*.)

The case went to trial in 2011.[3]  The trial court instructed the jury on direct aiding and abetting (CALJIC Nos. 3.00 and

---

[nonpub. opn.] (*Robles I*).  As the truth of the facts of the crimes recited in *Robles I* are not necessary for our resolution of this appeal, we summarize them only for the basis of Robles's conviction.  (See *People v. Woodell* (1998) 17 Cal.4th 448, 459-460.)

[3]    Authorities apparently didn't solve the crime for some number of years.  The day after the Santa Monica shooting, police arrested Robles and Garcia on unrelated charges.  They were convicted and sentenced to prison.  DNA testing in 2002 and 2004 revealed the presence of Robles's and Garcia's DNA on a knit cap that fell to the ground as the shooters fled to the waiting car.  In 2006 and 2007, police conducted further interviews—as well

3.01) and first and second degree murder (CALJIC Nos. 8.00, 8.10, 8.20, and 8.30). The court's murder instructions included the definition of "malice aforethought" (CALJIC No. 8.11) and the elements of second degree murder when the killing "result[s] from [an] unlawful act dangerous to life" (CALJIC No. 8.31). The court also instructed the jury on the special circumstance of multiple murder. The court did not instruct the jury on the felony-murder rule or the natural and probable consequences doctrine.[4]

The jury convicted Robles and Garcia of the first degree murders of Michael and Anthony Juarez as well as the attempted willful, deliberate, and premeditated murders of Vaughn and Frank Juarez. The jury found the special circumstance allegation true.[5] The trial court sentenced Robles to life without

---

as photographic and live line-ups—with the witnesses from the fast food restaurant. (*Robles I.*)

[4] On October 9, 2020, Robles filed a "Motion To Augment Record on Appeal" with "[a]ll jury instructions submitted to the jury in this matter, [f]iled on April 12[,] 2011" and "[a] complete reporter's transcript of the closing arguments of both the prosecution and defense counsel[,] [a]rgued April 8-11, 2011." Robles asserted, "The need for augmentation here is compelling." However, on November 23, 2020, Robles filed a "Request to Withdraw Motion to Augment Record on Appeal." This court granted that motion on November 25, 2020. As we noted, we granted the Attorney General's request to take judicial notice of the direct appeal file in *Robles I.* That file of course includes the instructions the trial court gave the jury in Robles's trial.

[5] Somewhere along the way, the People apparently replaced the "principal . . . [used/discharged] a firearm" allegation with allegations that Garcia personally used and discharged a firearm. The jury found those allegations as to Garcia true. (*Robles I.*)

4

the possibility of parole on the Anthony Juarez murder, 25 years to life on the Michael Juarez murder, and seven years to life on each of the attempted murders, all to be served consecutively. We affirmed Robles's conviction.  (*Robles I*.)

## 2.    *The section 1170.95 petition*

After Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect, Robles filed a document entitled "Petition for Resentencing (PENAL CODE § 1170.95)."[6]  The petition essentially recited the language of the statute, including these statements:  "[T]he jury returned a verdict convicting me of two counts of 1st degree murder and two counts of attempted murder pursuant to the felony murder rule or the natural and probable consequences doctrine," and "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree."  Robles "request[ed] that this court appoint counsel for me during this resentencing process."  Robles signed the petition, stating he declared the petition was "true except as to that stated on information or belief or that which is a legal conclusion and as to those, I believe them to be true." The petition had no attachments or exhibits.

The trial court did not appoint counsel for Robles.  On May 5, 2020, the court issued a minute order denying Robles's petition.  The court stated, "Petitioner claims that he was convicted on the natural and probable consequences theory.

---

[6]    Although filed in pro per, the petition appears to have been prepared by counsel.  It is dated November 26, 2019. Two proofs of service appear in the record, one signed by an Andre Ramnanan, dated March 24, 2020, and one signed by Robles, dated November 26, 2019.  A date stamp reflects the Los Angeles Superior Court filed the petition on April 21, 2020.

5

The record of conviction, however, belies that claim. The jury was not instructed on either felony-murder or the natural and probable consequence[s] doctrine."

## DISCUSSION

### 1. *Senate Bill 1437*

Senate Bill 1437 took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e). It provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life as described in section 190.2, subdivision (d). (See *Gentile, supra,* 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also added section 1170.95, which created a procedure whereby individuals convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition to vacate their convictions and be resentenced. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been

6

charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or under the natural and probable consequences doctrine, (2) he must have been convicted of first or second degree murder, and (3) he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960; *Gentile*, *supra*, 10 Cal.5th at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c) requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he is entitled to relief.  (See *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited.  Like the analogous prima

facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." '[7] . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then the court is justified in making a credibility determination adverse to the petitioner.' " (*Ibid.*; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction " 'conclusively demonstrate[s]' " petitioner is ineligible for relief].)

2. ***The Error in Denying Robles's Petition Without Appointing Counsel Was Harmless***

In *People v. Lewis*, *supra*, 11 Cal.5th 952, the Supreme Court, resolving a disagreement among the courts of appeal and agreeing with the analysis in *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted Nov. 10, 2020, S264684, held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c): "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, at pp. 961-963.) Because Robles recited the language of the statute in his petition,

---

7       The court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

the superior court erred by denying his petition without first appointing counsel.

The *Lewis* Court, however, also held a superior court's failure to appoint counsel to represent a petitioner when assessing whether he has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c) is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.)

Here, Robles is ineligible for relief under section 1170.95 as a matter of law. To be eligible for resentencing, Robles was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).) The jury instructions given at Robles's trial conclusively demonstrate he cannot make that showing. "[P]otential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequences doctrine or of felony murder." (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056 (*Soto*), review granted Sept. 23, 2020, S263939; see also *People v. Lee* (2020) 49 Cal.App.5th 254, 263-265, review granted July 15, 2020, S262459.) Where the record shows, as a matter of law, that the petitioner was not tried under either of those theories, he necessarily was convicted on a theory that survives the changes to sections 188 and 189 enacted by Senate Bill 1437.

Robles's jury was not instructed on either the natural and probable consequences doctrine or the felony-murder rule. Therefore, he could not have been convicted based on either of those theories. (See, e.g., *Soto*, *supra*, 51 Cal.App.5th at pp. 1054-1055 [trial court may rely on jury instructions when determining whether petitioner has made a prima facie

9

showing of entitlement to relief]; cf. *People v. Nguyen* (2020)
53 Cal.App.5th 1154, 1157, 1167-1168 [petitioner not entitled
to relief where he was convicted as direct aider and abettor,
and not of felony murder or murder under a natural and
probable consequences theory].)[8]  Because there is no reasonable
probability Robles would have obtained a more favorable result
had counsel been appointed and given the opportunity to file a
memorandum supporting the petition, the court's error in failing
to appoint counsel was harmless.  (See *People v. Watson, supra,*
46 Cal.2d at p. 836 [an error violating only California law is
harmless unless "it is reasonably probable that a result more
favorable to the appealing party would have been reached
in the absence of the error"].)

---

[8]      Robles refers to "*Caljic* 8.01, Malice Aforethought
Express/ Implied Malice defined [*sic*]."  The instruction, he says,
"contain[s] natural consequences language which could easily
be misstated in closing argument."  Robles's jury was not given
CALJIC No. 8.01 (which may have had to do with a presumption
of a lawful killing if the victim died more than three years and
a day after the cause of death was administered).  Perhaps Robles
means to refer to CALJIC No. 8.11.  That instruction—entitled
" 'Malice Aforethought'—Defined," was given to Robles's jury.
In defining "implied malice," the instruction states, as one of
the required elements, "The natural consequences of the act
are dangerous to human life."  The court in *People v. Soto, supra,*
51 Cal.App.5th 1043, explained the difference between "natural
consequences" as used in the definition of implied malice in
CALJIC No. 8.11, and the natural and probable consequences
doctrine.  (*Soto*, at pp. 1056-1058.)  "[T]hey are distinctly different
concepts."  (*Id*. at p. 1056.)

10

## DISPOSITION

We affirm the superior court's postjudgment order denying David Robles's petition to vacate his murder conviction and for resentencing under Penal Code section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


THOMAS, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11